IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARTURO BARELA,

        **Plaintiff,**

vs.                                                                                                                    Civ. No. 22-005 JFR

**KILOLO KIJAKAZI,** Acting Commissioner,
Social Security Administration,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 15)[2] filed April 8, 2022, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed July 7, 2022. Doc. 20. Defendant filed a Response on September 27, 2022. Doc. 24. Plaintiff filed a Reply on October 20, 2022. Doc. 25. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and is **GRANTED**.

### I. Background and Procedural Record

Plaintiff Arturo Barela (Mr. Barela) alleges that he became disabled on March 4, 2019, at the age of forty-four years, because of cancerous tumor of right kidney, tumor on adrenal gland,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 8, 9.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 15), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

depression, and anxiety.  Tr. 83, 212.  Mr. Barela completed one year of college in 1995.  Tr. 213.  Mr. Barela worked as a psych tech supervisor at a psychiatric hospital in Las Vegas, New Mexico.  Tr. 204-05, 213-14, 246-47.  Mr. Barela stopped working on March 3, 2019, due to his medical conditions.  Tr. 212.

On April 23, 2019, Mr. Barela protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 27, 174-77.  On August 22, 2019, Mr. Barela's application was denied. Tr. 82, 83-90, 105-08.  On March 26, 2020, it was denied again at reconsideration.  Tr. 91, 92-104, 114-17.  Upon Mr. Barela's timely request, Administrative Law Judge (ALJ) Jeffrey N. Holappa held a hearing on March 3, 2021.  Tr. 48-81.  Mr. Barela appeared with attorney representative Michelle Baca.[3]  *Id*.  On April 5, 2021, ALJ Holappa issued an unfavorable decision.  Tr. 24-37.  On December 7, 2021, the Appeals Council denied Mr. Barela's request for review and upholding the ALJ's final decision.  Tr. 1-4.  On January 4, 2022, Mr. Barela timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.     Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the

---

[3] Mr. Barela is represented in these proceedings by Attorney Laura Johnson.  Doc. 1.

2

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

3

claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. <u>Analysis</u>

The ALJ determined that Mr. Barela met the insured status requirements of the Social Security Act through December 31, 2024, and that he had not engaged in substantial gainful activity since his alleged onset date. Tr. 29. He found that Mr. Barela had severe impairments of right renal cell carcinoma - status post Robotic Assisted Laparoscopic Partial Nephrectomy (March 2019), degenerative disc disease of the lumbar spine, herniated disc, lumbar spondylosis with radiculopathy, generalized anxiety disorder and depressive disorder. *Id.* The ALJ also found that Mr. Barela was diagnosed with several impairments that were nonsevere, including left adrenal adenoma, gallbladder polyp, obesity, hypertension, obstructive sleep apnea, inguinal hernia, gastritis, acute conjunctivitis, and H. pylori infection. *Id.* Lastly, the ALJ found that Mr. Barela had a history of impairments that were not medically determinable, including chronic abdominal pain. *Id.* The ALJ determined that Mr. Barela's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 30-32. Accordingly, the ALJ proceeded to step four and found that Mr. Barela had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations:

> the claimant retains the functional capacity to perform light work, lift/carry up to 20/10 pounds occasionally/frequently, sit-stand-walk up to 6/6 hours in an 8-hour day, push/pull as much as lift/carry, but is limited to occasional climbing of ramps and stairs, never climbing ladders or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. The claimant is further limited to no exposure to unprotected heights or moving mechanical parts. Finally, the claimant is limited to understanding, remembering, and carrying out simple and detailed tasks, further defined as semi-skilled (SVP 4 or below) work, making commensurate semi-skilled (SVP 4 or below) work-related decisions, dealing with changes consistent with a semi-skilled (SVP 4 or below) work setting, and maintaining concentration, persistence, and pace for at least two hour intervals.

Tr. 32-. The ALJ determined that considering Mr. Barela's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform.[5] The ALJ determined, therefore, that Mr. Barela was not disabled. Tr. 36-37.

In support of his Motion, Mr. Barela argues that (1) the ALJ erred by failing to properly assess the opinion of treatment provider CNP Cristina Carlson; (2) the ALJ failed to properly consider evidence submitted by Mr. Barela; and (3) the ALJ's RFC is not based on substantial evidence because he failed to account for Mr. Barela's subjective allegations of pain and other symptoms contrary to case law and Social Security Rulings 96-8p and 16-3p. Doc. 7-12.

For the reasons discussed below, the Court finds that the Appeals Council failed to consider new, chronologically pertinent and material evidence and that there is a reasonable probability that the additional evidence would change the outcome of the ALJ's decision. This case, therefore, requires remand.

    **A.**    **Relevant Behavioral Health Evidence**

        **1.**    **James Dowling, Ph.D.**

On February 12, 2019, Mr. Barela presented to psychologist James Dowling, Ph.D., complaining of anxiety related to confusion over his medical conditions and prognosis. Tr. 344-46. Mr. Barela reported being diagnosed with tumors on his kidney and adrenal gland with surgery scheduled for March 4, 2019. *Id.* Dr. Dowling instructed Mr. Barela to use breathing, walking and self-talk to cope with anxiety. *Id.*

---

[5] The vocational expert testified that Mr. Barela would be able to perform the requirements of representative occupations such as a Small Products Assembler, DOT #706.687-922 (364,000 jobs in the national economy); a Production Assembler, DOT #706.687-010 (54,000 jobs in the national economy); a Marker, DOT 209.587-034 (227,000 jobs in the national economy); and Cashier II, DOT #211.462-010 (569,000 jobs in the national economy). Tr. 36.

Mr. Barela saw Dr. Dowling again on March 13, March 20, April 3, April 17 and April 28, 2019.  Tr. 334-38.  Mr. Barela reported experiencing anxiety, depression, and occasional panic attacks related to a combination of stressors, including concern over his daughter's safety, fear of death due to his medical conditions, and stress about returning to work.[6]  *Id.*  Dr. Dowling administered CORE-10[7] and CORE-5 assessments for measuring psychological distress which demonstrated mild and moderate levels of stress/problems.  *Id.*  Dr. Dowling also administered the PHQ-9 patient depression questionnaire which demonstrated depression.  *Id.*  Dr. Dowling diagnosed major depressive disorder, single episode, moderate and generalized anxiety disorder.  *Id.*   Dr. Dowling initiated psychotherapy to assist Mr. Barela in coping with his numerous stressors and monitored his medications.[8]

### 2.     **Larry D. Holden, M.D.**

On June 13, 2019, Mr. Barela presented to Larry Holden, M.D., at Christus St. Vincent Behavioral Health.  Tr. 432-36.  Mr. Barela reported increasing depression and anxiety related to major life stressors, including the uncertainty of his health and a custody dispute over his daughter.  *Id.*  Dr. Holden noted on mental health exam, *inter alia,* that Mr. Barela was alert and fully oriented, depressed, considerably anxious, and significantly worried about his health.  *Id.*  Dr. Holden diagnosed generalized anxiety and severe episode of major depressive disorder without psychotic features (chronic).  *Id.*  Dr. Holden continued Mr. Barela on Wellbutrin and Ambien, and added Zoloft to his medication therapy.  *Id.*

---

[6] Mr. Barela reported to multiple healthcare providers that he was exposed to asbestos in the building in which he worked as a psych tech supervisor and that six co-workers had been diagnosed with cancer.  Tr. 471, 574, 595, 635, 746.

[7] Clinical Outcomes in Routine Evaluation.

[8] Mr. Barela was taking Ambien and Wellbutrin XL.  Tr. 334-38.

7

### 3. Cristina Carlson, CNP

On August 21, 2019, Mr. Barela presented to psychiatric/mental health specialist Cristina Carlson, CNP, of Christus St. Vincent Behavioral Health. Tr. 471-73. Mr. Barela reported many stressors in his life, including custody issues involving his daughter and his cancer diagnosis. *Id.* Mr. Barela reported he had discontinued antidepressants, but his depressive mood, excessive worry and anxiety persisted. *Id.* He wished to restart Wellbutrin and try something different for anxiety. *Id.* CNP Carlson's mental status exam of Mr. Barela was remarkable for depressed mood and constricted affect. *Id.* CNP Carlson diagnosed generalized anxiety disorder and prescribed Wellbutrin for depression and Hydroxyzine for anxiety. *Id.*

Mr. Barela saw CNP Carlson five more times over the next year. Tr. 587-89, 736-39, 746-49. Mr. Barela continued to report stress and anxiety over his cancer diagnosis and the custody of daughter. *Id.* On mental status exam, CNP Carlson noted at various times that Mr. Barela was subdued, anxious, stressed, and worried all the time about his health. *Id.* She consistently diagnosed him with generalized anxiety disorder. *Id.*

On August 20, 2020, CNP Carlson completed a *Mental Residual Functional Questionnaire* on Mr. Barela's behalf. Tr. 592-600. CNP Carlson indicated she had treated Mr. Barela for one year; that he exhibited symptoms of anxiety disorder including automatic hyperactivity apprehensive expectation and vigilance and scanning; that he was triggered by encounters with other people, groups of people, and work setting; and that he avoids social interaction, sleeps poorly, and worries excessively about his daughter's safety and his health (that his cancer has/is spreading). Tr. 592. CNP Carlson noted an Axis I diagnosis of generalized anxiety disorder and an Axis V GAF rating of 45.[9]

---

[9] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed.

CNP Carlson assessed that Mr. Barela has *no significant limitations* in his ability to (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (4) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (5) be aware of normal work hazards; (6) travel in unfamiliar places or use public transportation; and (7) set realistic goals or make plans independently of others. *Id.* She assessed that Mr. Barela is *moderately limited* in his ability to (1) work in coordination with or proximity to others without being distracted by them; (2) make simple work-related decisions; (3) interact appropriately with the general public; (4) ask simple questions or request assistance; and (5) respond appropriately to changes in the work setting. *Id.* Finally, she assessed that Mr. Barela is *markedly limited* in his ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) sustain an ordinary routine without special supervision; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (8) accept instructions and respond appropriately to criticism from supervisors. *Id.*

    4.    **Evan J. Skow, M.D.**

On September 23, 2020, Mr. Barela presented to psychiatrist Evan J. Skow, M.D. Tr. 750-53. Mr. Barela reported the mass on his left adrenal gland and a newly diagnosed "mass" on

---

2000) at 32.  A GAF score of 41-50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (*e.g.,* no friends, unable to keep a job). *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

his gallbladder. *Id.* Mr. Barela reported that abdominal pain prevented him from working and that he was fearful that something was going to happen to him medically while he was home alone with his daughter. *Id.* Dr. Skow's mental status exam of Mr. Barela was positive for anxiety and tension. *Id.* Dr. Skow assessed that Mr. Barela was struggling considerably with anxiety due to his recent medical diagnoses. *Id.* Dr. Skow prescribed Quetiapine. *Id.*

On October 15, 2020, Mr. Barela returned to see Dr. Skow. Tr. 759-62. Mr. Barela reported that his sleep had improved and that better sleep was helping with his mood. *Id.* Mr. Barela also reported feeling a little less anxious after an appointment with general surgery regarding his gallbladder.[10] Dr. Skow's mental status exam of Mr. Barela was unremarkable. *Id.* Dr. Skow diagnosed generalized anxiety disorder and made medication adjustments. *Id.*

On December 16, 2020, Mr. Barela presented to Dr. Skow and reported his anxiety was "up the wall." Tr. 776-80. He reported having a colonoscopy and "there may be precancerous lesions, which is making him anxious." *Id.* Dr. Skow noted Mr. Barela was anxious, tearful and sad, and that he was struggling with chronic illness/pain and the uncertainty of his prognosis. *Id.* Dr. Skow diagnosed generalized anxiety disorder and depressive disorder and discussed medication adherence. *Id.*

On February 26, 2021, Dr. Skow prepared a "To Whom It May Concern" letter in which he stated:

> Arturo J. Barela has been a patient under my care since Sept. 2020. Prior to that, he was seen in this clinic by Cristina Carlson, CNP, and initially evaluated by Larry Holden, MD, in June 2019. Since then, he has been treated for significant anxiety and depressed mood around the stress, uncertainty, and chronic pain associated with his ongoing medical ailments. His inability to work due to abdominal pain has imposed considerable anxiety and associated financial stressors, and we are working to do what we can to alleviate some of that stress with both medication and lifestyle interventions (eg sleep hygiene).

---

[10] General surgeon Julie Wesp, M.D., determined that the polyp on Mr. Barela's gallbladder would be monitored and there was no surgical intervention indicated at this time. Tr. 754-58.

Tr. 804.

On March 18, 2021, Mr. Barela presented to Dr. Skow complaining of a depressed mood, anxiety, and chronic abdominal pain. Tr. 43-47. Mr. Barela reported panic attacks, difficulty sleeping, isolating, and that "[e]verything that's been removed from my body has been cancerous or pre-cancerous." *Id.* On mental status exam, Dr. Skow indicated Mr. Barela was sad and anxious. *Id.* Dr. Skow administered a PHQ-9 and assessed that Mr. Barela's history, presentation and PHQ-9 responses were consistent with major depressive disorder, severe, in the context of multiple medical comorbidities. *Id.* Dr. Skow noted that he could not speak to the etiology of Mr. Barela's chronic pain, but that it was clear that his pain, along with the uncertainty around his prognosis, causes him significant emotional distress and is a major contribution to his depressed mood. *Id.* Dr. Skow counseled Mr. Barela, encouraged him to continue therapy with Dr. Dowling, and discussed the importance of medication adherence. *Id.*

On May 25, 2021, seven weeks after the ALJ's decision, Dr. Skow completed a *Medical Assessment of Ability To Do Work-Related Activities (Mental)* on Mr. Barela's behalf. Tr. 15. Dr. Skow assessed that Mr. Barela had *mild limitations* in his ability to (1) understand and remember very short and simple instructions; (2) carry out simple instructions; (3) ask simple questions or request assistance; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (7) be aware of hazards and take adequate precautions. *Id.* He assessed that Mr. Barela had *moderate limitations* in his ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) sustain an ordinary routine without special supervision; (5) work in coordination

with/or proximity to others without being distracted by them; (6) make simple work-related decisions; (7) interact appropriately with the general public; (8) respond appropriately to changes in the workplace; (9) travel in unfamiliar places or use public transportation; and (10) set realistic goals or make plans independently of others. *Id.* Finally, Dr. Skow assessed that Mr. Barela had *marked limitations* in ability to (1) maintain attention and concentration for extended periods of time (*i.e.,* 2-hour segments); (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods. *Id.*

On the same date, Dr. Skow assessed that Mr. Barela met the criteria for Listings 12.04 *Depressive, Bipolar and Related Disorders* and 12.06 *Anxiety and Obsessive-Compulsive Disorders*. Tr. 16, 17.

### B. Consideration of Additional Evidence

Mr. Barela submitted Dr. Skow's March 18, 2021, treatment notes (Tr. 43-47) and Dr. Skow's May 25, 2021, opinion evidence regarding Mr. Barela's ability to do work-related mental activities (Tr. 15-17) to the Appeals Council. As to the former, the Appeals Council found that Dr. Skow's treatment notes did not show a reasonable probability that they would change the outcome of the decision. Tr. 2. As to the latter, the Appeals Council found that Dr. Skow's May 25, 2021, opinions did not relate to the relevant period at issue. *Id.* The Appeals Council did not exhibit this evidence or make it part of the record. Tr. 2, 5-6.

Mr. Barela argues that the Appeals Council's findings are improper and that Dr. Skow's May 25, 2021, opinion evidence is new, material, and chronologically pertinent, and that there is a reasonable probability that the additional evidence would change the outcome of the ALJ's

decision. Doc. 2 at 12-18. Mr. Barela argues, therefore, that the Appeals Council should have considered it.[11] Doc. 2 at 12-18. The Commissioner contends that the Appeals Council correctly determined that Dr. Skow's opinions did not pertain to the relevant period of time. Doc. 24 at 20-21. The Commissioner further contends that there is no reason to believe that the additional evidence would have changed the ALJ's analysis because the same evidence that the ALJ cited in support of his finding that CNP Carlson's opinion was unpersuasive also contradicts Dr. Skow's opinions. *Id.* The Commissioner asserts, therefore, that even if Dr. Skow's opinions had been before the ALJ, the ALJ would likely have found them unpersuasive. *Id.*

Here, the Appeals Council explicitly stated it did *not* accept and consider the new evidence; *i.e.,* "[w]e did not exhibit this evidence." Tr. 2. Additionally, the Appeals Council indicated the new evidence was not made a part of the record. Tr. 5-6. In other words, the Appeals Council's dismissal of the additional evidence's import on the grounds that it did not show a reasonable probability that it would change the outcome of the decision and that it did not relate to the relevant period of time indicates that it ultimately found the evidence did not qualify for consideration at all. *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013); *see also*

---

[11] Mr. Barela also asks this Court to either find that he had good cause for submitting the additional evidence to the Appeals Council or find that a good cause analysis is unnecessary under the circumstances. Doc. 20 at 13-15. The Commissioner does not address Mr. Barela's request and/or argument related to good cause. Instead, in a footnote, and without more, the Commissioner cites *Sewell v. Comm'r, SSA*, 20-1409, 2021 WL 3871888, at *4-5 (10th Cir. Aug, 31, 2021) (unpublished) and states that "*Sewell* raises the possibility that the regulations abrogate *O'Dell*, and the Commissioner reserves the right to make that argument in a future case." Doc. 24 at 20, fn. 8. To begin, the Court is under no obligation to address arguments wanting for adequate development. *Glossip v. Chandler*, No. 14-CV-665, 2021 WL 4760383, at *7 (W.D. Okla. Oct. 12, 2021) (stating that the "district court is free to disregard arguments that are not adequately developed"). That aside, in the absence of opposition from the Commissioner, and because the Appeals Council did not raise good cause as a reason for not accepting the additional evidence submitted, the Court finds the issue of good cause is waived. *See* 20 C.F.R. §§ 404.970(a)(5) (explaining that the Appeals Council will only consider additional evidence "if you show good cause for not informing us about or submitting the evidence as described in § 404.935[(Submitting written evidence to an administrative law judge)]," and instructing that "[i]f you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section *or* the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, *the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application.*" ). 20 C.F.R. § 404.970(c) (emphasis added).

*Sewell v. Commissioner, SSA*, 2021 WL 3871888, at *5 (10th Cir. Aug. 31, 2021) (unpublished) (explaining that "new evidence submitted to the Appeals Council is no longer automatically included in the substantial evidence analysis."). As such, if the Appeals Council should have considered the additional evidence but failed to do so, it would be improper for this Court to perform a substantial evidence review of the ALJ's decision by evaluating new evidence that was not considered below. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Thus, the initial question before the Court is whether the Appeals Council should have considered the additional evidence.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to A *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). "[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

Additional evidence should be considered only if it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. § 404.970(a)(5). Evidence is new "if it is not duplicative or cumulative" and material "if there is a reasonable possibility[12] that it would have changed the outcome." *Threet,* 353 F.3d at 1191. Evidence is

---

[12] The newest version of § 404.970(a)(5) adds a fourth requirement: that "there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) (emphasis added). This requirement heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable *possibility* of changing the outcome, now it requires a reasonable *probability* of changing the outcome. *See Hawks v. Berryhill*, No. 1:17CV1021, 2018 WL 6728037, at *4 & n.5 (M.D.N.C. Dec. 21, 2018).

chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

The Court addresses all of the criteria as part of its *de novo* review.

### 1.      **The Additional Evidence Is New**

Dr. Skow's May 25, 2021, opinion evidence is new because it is not duplicative or cumulative. To begin, Dr. Skow's opinion evidence was not available to the ALJ at the time he made his decision. As such, the evidence is not duplicative. Next, Dr. Skow's opinion evidence is not cumulative because it was rendered ten months after CNP Carlson rendered her opinion on Mr. Barela's ability to do work-related mental activities, was rendered by Mr. Skow's treating psychiatrist, and no other treating provider opined on whether Mr. Barela met a listing.

### 2.      **The Additional Evidence Is Chronologically Pertinent**

The additional evidence relates to the period at issue. Dr. Skow completed the *Medical Assessment of Ability To Do Work-Related Activities (Mental)* on May 25, 2021, and assessed that Mr. Barela met the criteria for certain listings, *after* the ALJ issued his Notice of Decision. Tr. 15-17. It is undisputed, therefore, that the form is dated after the ALJ's final decision. However, the form instructions directed Dr. Skow to consider Mr. Barela's "medical history and the chronicity of findings as from **one year prior to initial visit to current examination**." *Id.* (emphasis in original); *see* HALLEX I-3-3-6(B) (noting that there are circumstances when

evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated). Therefore, given these instructions, Dr. Skow's opinion of Mr. Barela's ability to do work-related mental activities makes a direct reference to the time period adjudicated. Moreover, Dr. Skow's opinion directly relates to his and other behavioral healthcare provider treatment notes and diagnoses from the relevant period of time. For example, in his February 26, 2021, "To Whom It May Concern" letter, Dr. Skow explained that Mr. Barela had been treated since June 2019 by Dr. Skow, CNP Carlson, and Dr. Holden "for significant anxiety and depressed mood around the stress, uncertainty, and chronic pain associated with his ongoing medical ailments" Tr. 804. There is no evidence that the Appeals Council considered this when it determined whether to consider this additional evidence, as they were required to do. *Id.* Instead, the Appeals Council applied a strict deadline and determined that the evidence did not relate to the relevant time period because the medical source statement was dated after the ALJ's decision. This is error.

### 3. The Additional Evidence Is Material

Dr. Skow's opinion evidence is material. Evidence is material to the determination of disability "if there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.97(a)(5). Here, the ALJ found persuasive and relied on the nonexamining State agency psychological consultants to make his assessment of Mr. Barela's ability to do work-related mental activities.[13] Tr. 35. Dr. Skow, however, was

---

[13] On July 3, 2019, nonexamining State agency psychological consultant Richard Sorensen, Ph.D., made step two and three findings at the initial stage of Mr. Barela's application. Tr. 87-88. On March 16, 2020, nonexamining State agency psychological consultant Scott R. Walker, M.D., affirmed at reconsideration Dr. Sorensen's findings that Mr. Barela's mental impairments were *nonsevere*. Tr. 98-99. The ALJ's reliance on their steps two and three findings, *i.e.,* that Mr. Barela's mental impairments were *nonsevere*, is not clear to the Court given that the ALJ in turn made step two findings in his determination that Mr. Barela's general anxiety disorder and depressive disorder were severe. Additionally, Social Security regulations and rulings instruct that an adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." 20 C.F.R. § 404.1520a and SSR 96-

Mr. Barela's treating psychiatrist for several months during which time he treated and/or referred Mr. Barela for care directly related to the impairments Mr. Barela alleges render him disabled. *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(v) and (4) (describing factors to consider in weighing medical opinion evidence, including a medical provider's relationship with a claimant and the specialization of the medical provider). Additionally, many of Dr. Skow's assessed limitations, including certain marked limitations, are consistent with CNP Carlson's such that, if accepted, there is a reasonable probability that the additional evidence would change the outcome of the ALJ's decision. *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical sources, the more persuasive the medical opinion will be). For example, both Dr. Skow and CNP Carlson assessed that Mr. Barela had *marked limitations* in his ability to, *inter alia*, (1) maintain attention and concentration for extended periods of time (*i.e.,* 2-hour segments); (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. These mental abilities are needed for any job. *See* POMS DI 25020.010.B.2 – *Mental Abilities Needed for Any Job*. For these reasons, this evidence is material.

      Having found that Dr. Skow's May 25, 2021, opinion evidence is new, chronologically relevant and material, and that there is a reasonable probability that the additional evidence

---

8p, 1996 WL 374184, at *4. In other words, Dr. Sorensen's and Dr. Walker's steps two and three findings only served to rate the severity of Mr. Barela's mental impairments and were not mental RFC assessments. Thus, it is not clear to the Court what the ALJ was relying on given that neither Dr. Sorensen nor Dr. Barela completed an assessment regarding Mr. Barela's ability to do work-related mental activities. As such, the Courts finds there is a reasonable probability that Dr. Skow's opinion evidence, which actually assesses Mr. Barela's ability to do work-related mental activities, could change the outcome of the ALJ's decision.

would change the outcome of the ALJ's decision, this case must be remanded for further proceedings. *Krauser*, 638 F.3d at 1328.

## C. Remaining Issues

The Court will not address Mr. Barela's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. Conclusion

For the reasons stated above, Mr. Barela's Motion for Remand (Doc. 20) is **GRANTED** and this matter is remanded for additional proceedings.

*[signature]*

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**